# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

In the Matter of: )
)
Alvin Johnson, and ) Case No. 09-00240-TOM7
Carole D. Johnson, )
    Debtors ) Chapter 7
)
)

_____

Alvin Johnson, and )
Carole D. Johnson, )
    Plaintiffs, ) A.P. No. 16-00039-DSC
vs. )
)
Lisa Antoine, )
    Defendant. )

### Memorandum of Decision

This case came before the Court on March 16, 2017, for trial on the Plaintiffs Alvin Johnson and Carole D. Johnson's Complaint for Civil Contempt and Violations of the Discharge Injunction and the Defendant Lisa Antoine's Counterclaim. Appearing before the Court were Oscar W. Adams, III and Roderick Walls for the Johnsons and Lisa Antoine, Pro Se. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A),

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

    The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

(B), (I), and (O).[2] This Court has considered the pleadings, arguments of counsel, the testimony of witnesses, the exhibits, and the law, and finds and concludes as follows:[3]

This case began as a disagreement between neighbors who still reside across the street from each other in a residential subdivision of Birmingham, Alabama. The dispute concerns the Defendant's purchase of a real estate lot from the Plaintiffs' company in 2007, and it has evolved into a bitter contest that has visited all levels of the Alabama state-court system more than once. The case arrives at this Bankruptcy Court for a determination of the Plaintiffs' claims for violation of their Chapter 7 discharge injunction by the Defendant, and the Defendant's counterclaims of nondischargeability based on fraud by the Plaintiffs. For the reasons stated below, this Court finds that the Plaintiffs are not entitled to the relief requested in their complaint, except for Paragraph D. The Court further finds that the Defendant is not entitled to the relief requested in her counterclaim, and the debt claimed by the Defendant is discharged as of the date of this decision.

---

[2] 28 U.S.C. §157(b)(2)(A) provides as follows:
      (b)(2) Core proceedings include, but are not limited to–
….
    (A) matters concerning the administration of the estate;
    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and
        estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11
        but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death
        claims against the estate for purposes of distribution in a case under title 11;
….
    (I) determinations as to the dischargeability of particular debts;
….
    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the
debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death
claims[.]

[3] This Memorandum Opinion constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

# I. Findings of Fact[4]

The following facts are based on the testimony and the exhibits presented by the parties at trial.

## A. Antoine's Real Property

Lisa Antoine (hereinafter "Antoine") and her now-deceased husband, Ronald Glenn, Sr. (hereinafter "Glenn")[5], signed a contract with Oxmoor Landing, LLC (hereinafter "Oxmoor Landing"), on October 25, 2007 for the purchase of Lot 35 in the Oxmoor Landing subdivision near the Ross Bridge development (Defendant's Ex. 2). Oxmoor Landing was wholly owned by Alvin Johnson and Carole D. Johnson (hereinafter "Johnsons"), the plaintiffs in this case. Antoine served as her own builder and contractor for the preparation of Lot 35 and the construction of her and her husband's home, which has a street address of 135 Jewell Circle, Birmingham, Alabama. The Johnsons also reside in the Oxmoor Landing subdivision at 140 Jewell Circle, which is across the street and a few lots down from Antoine's home.

This dispute began in February 2008, when Antoine observed water ponding in the rear of her lot and several adjoining lots (Defendant's Ex. 1). She brought this problem to the Johnsons' attention, and tensions quickly developed into open accusations and written communications about who was responsible for the standing water (Defendant's Ex. 9). Although the record was not clear, it appears that the written communications between the parties began during the same time as the grading of Lot 35, the construction of Antoine's home, and the completion of the landscaping around her home. Every year from 2008 to 2015, surface waters collected when it rained, and

---

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] Testimony during trial revealed that Ronald Glenn, Sr. passed away in 2011, and Mrs. Antoine has since been the sole owner of the real property at issue in this case. Any reference to Mrs. Antoine regarding the 2009 state-court case also includes Mr. Glenn.

ponded on Lots 35, 36, 38, and 39 between the months of March and November. Despite years of litigation in the Alabama state-court system in two separate cases, an extreme disagreement continues between Antoine and the Johnsons about the standing water and the annual ponding problem on Antoine's lot and several adjoining lots.

### B. The Johnsons' Bankruptcy Case

This matter first arrived at the bankruptcy court on January 14, 2009 when the Johnsons filed Chapter 7 bankruptcy case no. 09-00240-TOM7. Page 1 of the Johnsons' Chapter 7 petition stated that "[d]ebtor estimates that funds will be available for distribution to unsecured creditors" and it estimated the Johnsons' assets at $1 million to $10 million. The bankruptcy clerk identified the Johnsons' case as an "Asset" Chapter 7 case and issued a notice that included a deadline for all creditors, except governmental units, to file a proof of claim on or before May 20, 2009.[6] Per the clerk's notice, the deadline to file a complaint objecting to discharge of the debtor, or to determine dischargeability of certain debts, was April 20, 2009.

The Johnsons' bankruptcy schedules disclosed interests in partnerships and joint ventures including Oxmoor Landing and The Johnson Realty Co, Inc. (hereinafter "Johnson Realty"). However, the Johnsons' bankruptcy schedules did not list Antoine or Glenn as creditors, or disclose any dispute or debt with them. The Johnsons received a Chapter 7 discharge from the bankruptcy court on May 20, 2009. Thereafter, the Chapter 7 Trustee collected $12,500 from assets of the Johnsons' bankruptcy estate and distributed the funds towards the administrative expenses of the case. The trustee was not able to collect enough funds to make a distribution to the creditors who filed proofs of claim. The bankruptcy court entered an order approving the trustee's final

---

[6] Pursuant to Federal Rule of Bankruptcy Procedure 3002(c), governmental units had a different time requirement than other creditors to file proofs of claim in the Johnsons' Chapter 7 case. The claims bar date that applied to non-governmental creditors was May 20, 2009.

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document      Page 4 of 32

report and account on February 25, 2015, and the bankruptcy clerk closed the Johnsons' Chapter 7 case on May 28, 2015.

### C. Antoine's First State-Court Lawsuit

Antoine filed a lawsuit, case no. CV-09-01259, in the Circuit Court of Jefferson County, Alabama, Bessemer Division, on December 11, 2009 (hereinafter "*Antoine I*") against several parties including the Johnsons and one of their companies, Johnson Realty (Plaintiffs' Ex. 1).

Antoine's complaint alleged trespass to real property, injury to real property, and nuisance based on the rainwaters that were flooding the rear portion of her lot each year. The complaint further alleged the flooding had devalued her property and posed a health and safety threat. The complaint sought an award for actual and punitive damages.

Two defendants, other than the Johnsons, filed a counterclaim against Antoine for trespass and negligence based on allegations that Antoine or her subcontractors had filled her lot in a manner that elevated the rear portion of the lot for the construction of her home. According to the Defendants' counterclaim, this action created a dam or berm that obstructed the natural flow and drainage of surface waters and caused the water ponding on their Lots 36, 38, and 39, which adjoined Antoine's Lot 35.

In response to the complaint, the Johnsons' attorney, Oscar Adams, filed a Suggestion of Bankruptcy in *Antoine I* on January 8, 2010 to notify the circuit court and all of the parties that the Johnsons had filed a Chapter 7 bankruptcy case (Plaintiffs' Ex. 2). Shortly thereafter, Antoine filed a Motion for Relief from Automatic Stay with the bankruptcy court seeking permission to proceed with her complaint against the Johnsons in state court. The bankruptcy court heard Antoine's Motion for Relief and entered an order on April 6, 2010 that denied the motion without prejudice (Plaintiffs' Ex. 8). During the hearing on Antoine's Motion for Relief, there was a discussion on

5

the record of whether Antoine's debt was a prepetition debt, that the Johnsons had not disclosed the dispute with Antoine to their bankruptcy attorney, and that the Johnsons would amend their bankruptcy schedules to list this omitted debt (Plaintiffs' Ex. 3).

Six days after the bankruptcy court denied Antoine's Motion for Relief, Antoine removed the Johnsons as defendants from the *Antoine I* lawsuit in state court. One day later, on April 13, 2010, the Johnsons amended Schedule F of their bankruptcy petition to list Antoine and Glenn as disputed, unsecured creditors with a debt of $1.00 (Plaintiffs' Ex. 9). This amendment to schedules occurred nearly one year *after* the Johnsons received a discharge in their "Asset" Chapter 7 bankruptcy case.

Matters in the *Antoine I* state-court case continued, as Antoine vigorously asserted that the defendants, including the Johnsons, were responsible for the water ponding that had created a wetland or swamp on the rear portion of her lot. The defendants continued to respond that Antoine caused the ponding problem when her subcontractors graded her lot for the construction of her home. Over Antoine's objection, the circuit court entered an order that permitted one of the defendants to dig test holes on Antoine's lot behind her house. Based upon the evidence presented from the test-hole dig, the circuit court found that fill and topsoil had been placed over the natural drain way when Antoine's subcontractors graded her lot, that construction debris had been buried behind Antoine's house, and that these actions created a dam or berm that obstructed the natural drain way for surface waters and caused the water ponding on Lots 35, 36, 38, and 39.

The circuit court ruled in favor of the defendants on March 15, 2011 and denied all of the relief requested in Antoine's complaint (Doc. No. 1, Ex. E). The court also entered a judgment for $35,000 in compensatory damages in favor of two defendants, Oxmoor Preservation, LLC and Hager Company, Inc., on their counterclaims against Antoine. The order permanently enjoined

Antoine from obstructing the free flow of surface waters draining from Lots 36, 37, 38, and 39 over Antoine's Lot 35. The court further ordered Antoine to construct and maintain a drain way on her property, Lot 35, to drain all reasonable surface waters from the upper lots.

Antoine appealed to the Alabama Court of Civil Appeals, which affirmed the substantive rulings in *Antoine I*, and reversed and remanded to the trial court with instructions to amend a post-trial remedy for a special master to hear any disputes about the new drain way instead of an arbitrator (Plaintiffs' Ex. 24). Antoine appealed the Alabama Court of Civil Appeals decision to the Alabama Supreme Court, which denied Antoine's Petition for Writ of Certiorari on May 10, 2013.[7]

### D. Antoine's Second State-Court Lawsuit

Antoine filed a second lawsuit, case no. CV-13-00025, on February 5, 2013, in the Circuit Court of Jefferson County, Alabama, Bessemer Division (hereinafter "*Antoine II*"), against numerous parties including the Johnsons and their companies, Johnson Realty and Oxmoor Landing (Plaintiffs' Exs. 4 and 21).

Antoine's second complaint claimed breach of contract, fraud, negligence, and mental anguish based on the same facts from *Antoine I* about the drainage of surface waters and the ponding problems on her lot. The complaint in *Antoine II* alleged that:

- Lot 35 was not suitable for building a house because of periodic flooding in violation of an implied warranty for residential house building suitability.

- The sales contract between Oxmoor Landing and Antoine fraudulently stated that Lot 35 was not in a flood plain.

---

[7] As indicated by the Alabama Case Detail summaries that were admitted as Plaintiffs' Exs. 1 and 4, many more motions, hearings, and orders occurred in the *Antoine I* and *Antoine II* state-court cases. However, in the interests of judicial economy, they are not discussed here because they did not change the final decisions reached by the trial court or the appellate courts in either case.

- The defendants, including Alvin Johnson, fraudulently omitted a drainage easement for Lot 35 and the adjoining lots from the Oxmoor Landing [subdivision plat] in violation of Alabama law (Defendant's Ex. 24).

- Oxmoor Landing submitted fraudulent topographic maps to the circuit court during the proceedings in *Antoine I*.

- The circuit court's award of compensatory damages and order for injunctive relief in *Antoine I* was based on intentional, fraudulent misrepresentations.

The complaint requested a judgment in Antoine's favor for damages plus interest and costs.

After hearing summary judgment arguments, the circuit court entered an order on December 4, 2013 that granted summary judgment in favor of some, but not all, of the defendants, and dismissed Antoine's claims with prejudice. Believing that some of her claims had not been adjudicated by the circuit court's order, Antoine appealed to the Alabama Court of Civil Appeals, which affirmed. She then petitioned the Alabama Supreme Court. By its order of June 26, 2014, the Alabama Supreme Court remanded *Antoine II* back to the circuit court to clarify the status of any claims not adjudicated by the order of December 4, 2013.

### E. Alabama Litigation Accountability Act

After the Alabama Supreme Court's order of remand in December 2013, proceedings in *Antoine II* continued at the circuit court. Several of the defendants, including the Johnsons, filed a claim against Antoine for attorneys' fees under the Alabama Litigation Accountability Act, Alabama Code section 12-19-270. The circuit court entered a final order on September 15, 2015 that granted summary judgment in favor of the defendants, including the Johnsons (Doc. No. 1, Ex. J). The circuit court's order awarded attorney fees of $15,975 plus costs to the Johnsons' companies, Johnson Realty and Oxmoor Landing. The order also awarded attorney fees of $38,951 to another defendant, Oxmoor Preservation/One, LLC. The order and judgments applied to Antoine individually, and as Trustee of the Lisa Hope Antoine Living Trust, which owned

8

Antoine's home at the time. Antoine appealed the findings in *Antoine II* to the Alabama Court of Civil Appeals, which affirmed the circuit court's ruling on July 15, 2016 with no opinion. Antoine appealed that decision to the Alabama Supreme Court, which denied Antoine's Petition for Writ of Certiorari on October 14, 2016 with no opinion (Plaintiffs' Ex. 13). Based on testimony at trial in the instant case, Antoine paid the Defendants' attorney fees and costs as ordered by the circuit court to avoid losing her home, but she continued her litigation efforts.

### F.  The Johnsons' Adversary Proceeding and Antoine's Counterclaim

The Johnsons filed the instant adversary proceeding before this bankruptcy court on April 4, 2016 as a complaint against Antoine under § 524 of the Bankruptcy Code for civil contempt and violation of the discharge injunction.[8] The Johnsons based their complaint on the continuation of litigation by Antoine after the Johnsons obtained a Chapter 7 discharge from the bankruptcy court. The Johnsons sought actual and punitive damages, as well as reasonable legal fees and expenses. They also asked that the alleged debt to Antoine be forever canceled and discharged.

Antoine filed a counterclaim against the Johnsons on October 19, 2016 and alleged fraud, false representation, fraud in the inducement, and fraud in the factum based on the same facts from *Antoine I* and *Antoine II* about the drainage of surface waters and the ponding problem on her property, Lot 35 (Plaintiffs' Ex. 22). Antoine seeks actual, compensatory, continuing, and punitive damages. According to her testimony and representations at trial, Antoine asserts her fraud claim against the Johnsons under 11 U.S.C. § 523(a)(2)(A) as money obtained by false pretenses, a false representation, or actual fraud.

---

[8] The Johnsons filed a Motion for Leave to Amend Complaint on November 17, 2016 to categorize their pleading as a motion instead of a complaint. This Court granted the motion on December 1, 2016 and treated the Plaintiffs' pleading as a motion pursuant to the holding of *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1326 (11th Cir. 2015). Based on Antoine's counterclaim, and for administrative purposes, this Court has maintained case number 16-00039 for these contested matters.

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document    Page 9 of 32

## II. Conclusions of Law

### A. Debt Not Scheduled

The Johnsons, in their complaint, alleged that Antoine violated the discharge injunction in their Chapter 7 case by failing to cease her state-court litigation activities against them once they received a discharge order from the bankruptcy court. Although the Johnsons did not list Antoine as a creditor in their bankruptcy schedules, they maintain that amending their schedules nearly one year after they received a discharge was sufficient to pull Antoine's debt within the scope of their discharge order so that they were forever relieved from the debt.

Antoine, in her counterclaim, alleged that the Johnsons owed a debt to her for fraud committed with the sale of Lot 35 of the Oxmoor Landing subdivision in 2007. She included the same fraud claims against the Johnsons in the *Antoine II* lawsuit before the Circuit Court of Jefferson County, Alabama, in 2013.

Pursuant to 11 U.S.C. § 523(a)(3)(B), a discharge under § 727 does not discharge an individual debtor from any debt-

. . . .

>    (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-
> . . . .
>        (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

Pursuant to § 523(a), "the belated amendment to schedules does not affect the dischargeability of the omitted debt." Lauren A. Helbling & the Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code*

10

*§ 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am. Bankr. L.J. 33, 35 (Winter 1995). "Subsequent amendments to schedules have no impact on the question of discharge and dischargeability." *Id.* at 42. "Since the creditor still must prove all the essential elements of the underlying § 523(a)(2), (4), or (6) action, the primary effect of § 523(a)(3)(B) is to eliminate the limitations period for bringing the action." *Id.* at 44. "In sum, the price to the debtor of omitting a debt...is loss of exclusive federal jurisdiction and loss of the sixty-day limitation period. Thereafter, the action may be brought, like most other dischargeability actions, at any time and either in a bankruptcy court or in a nonbankruptcy court." *Id.* at 44.

Another bankruptcy court in the Northern District of Alabama examined this issue in *In re James*, 184 B.R. 147 (Bankr. N.D. Ala. 1995). In that case, the Chapter 7 debtor failed to list a creditor because the debtor thought he had been sued in his official capacity only, and not individually. The court in that case relied heavily upon *In re Mendiola*, 99 B.R. 864 (Bankr. N.D. Ill. 1989), a case where a Chapter 7 Debtor unintentionally omitted a prepetition creditor.

To determine if an omitted debt was discharged in *Mendiola*, the court first reviewed the scope of the Chapter 7 discharge under § 727(b). "Under that section, the discharge 'discharges the debtor from all debts that arose before the date of the order for relief,' except as provided in Section 523." *Mendiola,* 99 B.R. at 865 (quoting 11 U.S.C. §727(b)).

The court in *In re James* found:

If the debt owed by the debtor to [creditor] is based upon one of the types listed at subsections (2), (4) or 6, of §523(a) (fraud, willful and malicious injury), then sub-part (B) of §523(a)(3) must be considered. A creditor who seeks to have its debt declared nondischargeable based upon an alleged intentional tort, [subsection (2), (4) or (6)], must file a complaint within the fixed period of time. If an intentional tort creditor was neither listed nor scheduled in the bankruptcy, it could not have filed a timely complaint. The purpose of §523(a)(3)(B) is to protect that creditor from being deprived of this right. In other words, sub-part (B) protects the right to file a proof of claim and the right to file a

dischargeability complaint where the bar date has expired and the creditor had no notice of same.

*James,* 184 B.R. at 150.

"Rule 4007 of the Bankruptcy Rules of Procedure, which states that a complaint which is based on subsections (2), (4) or (6) of § 523 must be filed within 60 days after the first meeting of creditors, is not applicable to the unlisted creditor without knowledge." *Id.* at 150.

The Johnsons amended their bankruptcy schedules on April 13, 2010 to list Antoine as a creditor. Alvin Johnson testified on direct examination that they did not list Antoine in their schedules because they did not think Antoine was a creditor, did not realize the dispute with her would escalate, and thought she would remedy the ponding situation. However, the Johnsons' intent is not the determining factor.

Antoine testified that she had no notice or actual knowledge of the Johnsons' bankruptcy case until the Johnsons' attorney filed a Suggestion of Bankruptcy with the circuit court in *Antoine I* on January 8, 2010. The Johnsons offered no testimony or documents in rebuttal.

Since Antoine had no notice or actual knowledge of the Johnsons' bankruptcy case until January 8, 2010, she did not know to file a timely proof of claim before the non-governmental claims bar date of May 20, 2009.[9] In addition, she did not know to file a timely request for a determination of dischargeability, also known as a dischargeability complaint, regarding her debt before the 60-day deadline of April 20, 2009.

---

[9] The Johnsons filed an "Asset" Chapter 7 case and the trustee made a distribution from assets that were property of the estate. Many bankruptcy court decisions have addressed the effect of a discharge upon the debt of a creditor not listed or scheduled in a "No-Asset" Chapter 7 case. *See In re Houston,* 310 B.R. 224 (Bankr. N.D. Ala. 2004). Those decisions do not apply here because the Johnsons filed and the trustee administered an "Asset" Chapter 7 case. In addition, the requirements of 11 U.S.C. § 523(a)(3)(B) apply equally in "Asset" and "No-Asset" cases when the alleged debt is based on fraud as it is here. *See* Helbling & Klein, *supra,* at 43.

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document    Page 12 of 32

Because the Johnsons did not list Antoine's debt in their bankruptcy schedules, that debt was not discharged in 2009. Likewise, the Johnsons' act of amending their schedules to add Antoine as a creditor in 2010, long after the entry of their discharge order, did not discharge Antoine's debt. In addition, Antoine was not subject to the 60-day limit for filing her dischargeability complaint before a bankruptcy court or a nonbankruptcy court.

The court in *James* found that "when a debtor fails to schedule a debt, Bankruptcy Rule 4007(b) affords the creditor the right to litigate dischargeability outside the normal time limits." *Id.* at 150.

This Court finds that the discharge order entered in the Johnsons' Chapter 7 case on May 20, 2009 did not discharge Antoine's debt pursuant to 11 U.S.C. § 523(a)(3)(B) because the Johnsons did not list or schedule her as a creditor, and Antoine had no notice or actual knowledge of the bankruptcy case necessary to file a timely proof of claim and a timely dischargeability complaint. As a result, under § 523(a)(3)(B), the Johnsons' discharge order of May 20, 2009 did not prohibit Antoine from proceeding with *Antoine I, Antoine II,* or the counterclaim for nondischargeability pending before this Court in the instant case.

Since this Court has determined that Antoine's debt was not discharged by the Johnsons' discharge order in 2009, it follows that Antoine cannot, at this point, be liable for violating the discharge injunction in the Johnsons' Chapter 7 case. Based upon the foregoing, the relief requested in Paragraphs A, B, C, and E of the Johnsons' complaint is due to be denied.

However, the analysis does not end here. This Court must now consider Paragraph D of the Johnsons' complaint, and Antoine's counterclaim, to determine whether the alleged debt meets the statutory requirements for a fraud exception to the Johnsons' Chapter 7 discharge. The answer to that question is the crux of the unresolved matters between the parties.

13

### B. Antoine's Counterclaim for Fraud

This Court has addressed the Johnsons' complaint and motion based on an alleged violation of the discharge injunction by Antoine. The Court now turns its attention to Antoine's counterclaim, which will be treated as a request for determination of dischargeability of debt, also known as a dischargeability complaint, under 11 U.S.C. § 523(a)(2)(A).[10]

Antoine argues that she would not have signed the contract to purchase Lot 35 from Oxmoor Landing in 2007 without the fraudulent conduct of the Johnsons. Her counterclaim asserts actual fraud, false representation, fraud in the inducement, and fraud in the factum based on the following:

- The 2007 Sales Contract. Alvin Johnson signed a sales contract on behalf of Oxmoor Landing which stated in Paragraph 8 that Lot 35 was not in a flood plain, but the lot floods.

- The Oxmoor Landing Subdivision Plat. Alvin Johnson signed the Oxmoor Landing subdivision plat without drainage easements on Antoine's lot or the adjoining lots in violation of Alabama law, and this amounted to a concealment of a drainage easement.

- The Birmingham Association of Realtors Contract Form. The parties executed a contract form approved by the Birmingham Association of Realtors in 1998 instead of a newer form approved by the Association in 2006, which made the executed contract illegal, unapproved, and obsolete. The 1998 form included Paragraph 18 about litigation costs. The 2006 form included Paragraph 15 about mediation and arbitration costs, and a waiver of trial by jury.

Section § 523 of the Bankruptcy Code provides in part:

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt-

. . . .

---

[10] Pursuant to the U.S. Supreme Court's decision in *Wellness Int'l Network, Ltd. V. Sharif*, 135 S.Ct. 1932, 1947-48 (2015), parties may consent to the entry of final orders and judgments by the bankruptcy court on non-core matters as long as such consent-whether express or implied-is knowing and voluntary. In the instant case, Antoine's counterclaim did not include a statement as required by Rule 7008 of the Federal Rules of Bankruptcy Procedure. This Court issued two orders on September 15, 2016 (Doc. No. 15) and December 1, 2016 (Doc. No. 70) which stated that the parties were deemed to consent to the entry of final orders and judgments by the bankruptcy court. Although Antoine's counterclaim was partially based on state law, this Court treats it as a dischargeability complaint under § 523(a)(2)(A), which is a core matter. In addition, Antoine chose to file her counterclaim in this Court after losing *Antoine I* and *Antoine II* and exhausting all of her appeals before the Alabama state courts.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

As one bankruptcy judge in the Northern District of Alabama has explained:

Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. *See Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir. 1994).

*Knotts v. Williams (In re Williams),* A.P. No. 02-00263-TOM-7 (Bankr. N.D. Ala. Sept. 11, 2003).

"Because 'false pretenses,' 'false representation,' and 'actual fraud' are placed in the disjunctive, Congress intended that any one of these is sufficient to establish nondischargeability under § 523(a)(2)(A)." *In re Zeller*, 242 B.R. 84, 87 (Bankr. S.D. Fla.1999).

False pretenses means:

any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol or token calculated and intended to deceive. It is a series of events, activities or communications which, when considered collectively, create a false sense and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor. Silence or concealment as to a material fact can constitute false pretenses.

*FCC Nat'l Bank v. Gilmore (In re Gilmore),* 221 B.R. 864,872 (Bankr. N.D. Ala. 1998) (citations omitted).

"A false representation typically requires 'an expressed misrepresentation by a debtor.'" *Williams,* A.P. No. 02-00263(quoting *Zeller*, 242 B.R. at 87 (Bankr. S.D. Fla.1999). *See also Carlosn v. Dover (In re Dover)*, 185 B.R. 85, 88 n.3 (Bankr. N.D. Ga. 1995).

15

In the Eleventh Circuit, the elements necessary to determine actual fraud include "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *SEC v. Bilzerian (In re Bilzerian),* 153 F.3d 1278, 1281 (11th Cir. 1998).[11]

### C. Elements Required to Establish Nondischargeability

To succeed with her counterclaim under § 523(a)(2)(A):

> The elements Plaintiff must establish for a determination of nondischargeability under this section include: 1) the debtor received or obtained money or property from the plaintiff, which creates a debt or obligation to the plaintiff; 2) the money or property was obtained and the debt incurred by either false pretenses, a false representation, or actual fraud; 3) the false pretense, false representation, or actual fraud was either done by the debtor knowingly or in reckless disregard of the truth; 4) the debtor's conduct was with the intention to deceive, with the intention that the plaintiff detrimentally rely, or with the intention that the plaintiff be given a false impression; 5) the plaintiff justifiably relied on the debtor's conduct or misrepresentation; and 6) the plaintiff suffered damages as a result of the debtor's actions.

*Williams*, A.P. No. 02-00263 (citing *SEC v. Bilzerian,* 153 F.3d at 1281).

"For these reasons, we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

The first element requires a finding that the Johnsons received money or property, which created a debt to Antoine. The sales contract (Defendant's Ex. 2) and the testimony showed that Antoine paid $76,000 to the Johnsons' company, Oxmoor Landing, for Lot 35. Although the Johnsons may not have received these sales proceeds directly, they received a benefit from the

---

[11] The U.S. Supreme Court has stated that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016). However, the instant case is not based on a fraudulent conveyance scheme, and the actual fraud alleged by Antoine is not dependent upon the false representation also alleged. This Court will apply the Supreme Court's definition of "actual fraud" from *Husky* to determine whether the elements of "actual fraud" have been met by Antoine's counterclaim.

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document      Page 16 of 32

sales proceeds through Oxmoor Landing. Under the "receipt of benefits" theory applicable in the Eleventh Circuit, the Johnsons, as owners, gained a benefit from the sales proceeds, thereby establishing the first element for a determination of nondischargeability on Antoine's debt. *See HSSM #7 Ltd. P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 890-91 (11th Cir.1996).

The second element requires a finding that the Johnsons obtained money or property from Antoine and incurred a debt to her by false pretenses, a false representation, or actual fraud. This element is problematic for Antoine's counterclaim, as discussed below.

### 1. The 2007 Sales Contract

Antoine has asserted that, in Paragraph 8 of the sales contract executed by her and Mr. Johnson on behalf of Oxmoor Landing in 2007, the Johnsons fraudulently represented that Lot 35 was not in a flood plain. However, Antoine's expert, Karen Christine Bailey, testified during the trial of this case that Lot 35 was *not* located in a special flood-prone area as identified by FEMA (Federal Emergency Management Agency).

Although Antoine offered two maps which indicated surface waters in the area where Lot 35 is now located (Defendant's Exs. 20 and 21), this Court was unable to give persuasive weight to these maps because Antoine failed to provide critical information such as who prepared the maps, how they were prepared, whether they represented a single-day sample or a daily, weekly, monthly, yearly, or other sample, and what amount of surface water the diagrams on the maps depicted.

### 2. The Oxmoor Landing Subdivision Plat

Antoine has asserted that Alvin Johnson committed fraud on February 15, 2005 when he signed the Oxmoor Landing subdivision plat (Defendant's Ex. 24) that did not include a drainage easement for Lot 35 or the adjoining lots in violation of Alabama law, and this amounted to the

17

concealment of a drainage easement. This Court found Mr. Johnson's testimony on this point to be credible that the surface waters drained naturally across Lot 35 before Antoine or her subcontractors graded her lot to begin construction of her home. Mr. Johnson's testimony showed that there simply was no drainage easement for Lot 35, and the need for a drainage feature did not arise until Antoine or her subcontractors graded her lot to begin construction of her home. Antoine did not offer sufficient testimony or documents to establish that Mr. Johnson concealed a drainage easement when he signed the Oxmoor Landing subdivision plat on February 15, 2005.

### 3. The Birmingham Association of Realtors Contract Form

Antoine has asserted that Alvin Johnson committed fraud on behalf of Oxmoor Landing by using a contract form approved by the Birmingham Association of Realtors in 1998 instead of a different version approved by the same association in 2006.

The 1998 form (Defendant's Exs. 2 and 30) contained Paragraph 18, which shifted the prevailing party's litigation costs, including court costs and reasonable attorney fees, to the losing party. The 2006 form (Defendant's Ex. 31) contained Paragraph 15, which required mediation, arbitration, and a waiver of trial by jury for all claims, disputes, or other matters in question between the parties.

It appears that the Birmingham Association of Realtors offered these forms to its members and others as a convenience or courtesy. However, no testimony was offered at trial about how these forms were drafted or updated, so this Court was unable to ascertain more information.

Parties generally possess the ability to negotiate a contract form and contract terms before they execute an agreement to make it binding. In this Court's view, there was not a particular contract form "approved" for the sale of real property in Alabama in 2007, nor is there one today. Parties can, and do, regularly bargain for beneficial terms like litigation costs and jury trial waivers

18

in contracts for the sale of real property. The fact that the Johnsons and Antoine, in the course of their negotiations, chose an older form and agreed to a sales contract that included a fee-shifting provision for court costs and attorney fees did not, by itself, indicate fraud.

Neither the testimony nor the exhibits showed, by a preponderance of the evidence, that the Johnsons committed fraud when Mr. Johnson signed the sales contract for Lot 35 on behalf of Oxmoor Landing. In addition, neither the testimony nor the exhibits showed, by a preponderance of the evidence, any fraudulent representations by the Johnsons that induced Antoine to sign the sales contract for Lot 35.

Based on the foregoing, Antoine has not met the burden of proof to establish that the Johnsons committed fraud by false pretenses, a false representation, or actual fraud when Alvin Johnson on behalf of Oxmoor Landing signed the subdivision plat, the sales contract for Lot 35, or the sales contract form. Therefore, Antoine has not established the second element for a determination of nondischargeability for her debt.

The third element requires a finding that the false pretense, false representation, or actual fraud was either done by the debtor knowingly or in reckless disregard of the truth. For the reasons stated previously, neither the testimony nor the exhibits showed, by a preponderance of the evidence, that the Johnsons committed fraud by false pretenses, a false representation, or actual fraud. In addition, the testimony and exhibits offered did not show, by a preponderance of the evidence, that the Johnsons committed any such actions knowingly or in reckless disregard of the truth. Therefore, Antoine has not established the third element for a determination of nondischargeability for her debt.

The fourth element requires a finding that the Johnsons' conduct was with the intention to deceive, with the intention that Antoine detrimentally rely, or with the intention that Antoine be

19

given a false impression. For the reasons stated previously, none of the testimony or exhibits indicated, by a preponderance of the evidence, such intent by the Johnsons. Therefore, Antoine has not established the fourth element for a determination of nondischargeability for her debt.

The fifth element requires a finding that Antoine justifiably relied on the Johnsons' conduct or misrepresentation. The evidence at trial showed that Antoine relied upon Alvin Johnson's conduct when he signed on behalf of Oxmoor Landing the subdivision plat, the sales contract, and the sales contract form for the sale of Lot 35. However, the evidence also showed no misrepresentation by the Johnsons. Therefore, Antoine has not established the fifth element for a determination of nondischargeability for her debt.

The sixth element requires a finding that Antoine suffered damages as a result of the Johnsons' actions. This element is also problematic for Antoine's counterclaim. According to the testimony and the exhibits, after nearly six years of litigation between these parties in *Antoine I* and *Antoine II,* the Alabama state courts determined that Antoine, not the Johnsons, created the problems that caused the water ponding on Lot 35 and the adjoining lots. Based on the testimony and exhibits presented, Antoine has not met the burden of proof to convince this Court that her damages resulted from the Johnsons' actions. Therefore, Antoine has not established the sixth element for a determination of nondischargeability for her debt.

Antoine has failed to establish all six elements required pursuant to Eleventh Circuit case law for a determination of nondischargeability for her debt under 11 U.S.C. § 523(a)(2)(A). Therefore, the relief requested in her counterclaim is due to be denied, and, as of the date of this

Court's decision, the debt claimed by Antoine from the Johnsons is hereby discharged pursuant to 11 U.S.C. § 727(b).[12]

Although this Court has found that the debt claimed by Antoine from the Johnsons is discharged because it did not meet the statutory requirements for nondischargeability under § 523(a)(2)(A), other reasons prevent this Court from granting the relief requested in Antoine's counterclaim.

### D. Res Judicata

In their amended answer, the Johnsons asserted several affirmative defenses to the fraud alleged in Antoine's counterclaim. One of the affirmative defenses raised was res judicata. "The doctrine of res judicata prevents a party from re-litigating a claim that already has been litigated to a conclusion." *Orton v. Caliber Home Loans,* No. 7:16-cv-01479-TMP, 2016 WL 7210448, at *2 (N.D. Ala. Dec. 13, 2016).

> "Res judicata, also known as claim preclusion, bars the parties from re-litigating a cause of action that was or could have been raised in that action." *Baldwin v. Citigroup, Inc. (In re Baldwin),* 307 B.R. 251, 260 (M.D. Ala. 2004). "To demonstrate that res judicata applies, the party asserting the bar must prove that (1) there was a prior judgment on the merits, (2) entered by a court of competent jurisdiction, (3) with substantial identity of the parties or their privies, (4) involving the same cause of action." *Id.* "If the later litigation arises from the same cause of action, then the judgment bars litigation not only of 'every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented.' " *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1549 n. 3 (11th Cir.1990) (quoting *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) ) (brackets in original).

*Danley v. Danley (In re Danley),* 552 B.R. 871, 892 (Bankr. M.D. Ala. 2016).

> "Res judicata is a broad, judicially developed doctrine, which rests upon the ground that public policy, and the interest of the litigants alike, mandate that there be an end to litigation; that those who have contested an issue shall be bound by the ruling

---

[12] This Court does not award costs of, and a reasonable attorney's fee for, the proceeding under 11 U.S.C. § 523(d) in favor of the Debtors because, for the reasons stated herein, the Court does not find that Antoine's position was without substantial justification.

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document      Page 21 of 32

of the court; and that issues once tried shall be considered forever settled between those same parties and their privies."

*Bond v. McLaughlin,* No. 1151215, 2017 WL 728176, at *5 (Ala. Feb. 24, 2017) (quoting *Lee L. Saad Const. Co., Inc. v. DPF Architects, P.C.*, 851 So. 2d 507, 516 (Ala. 2002).

In the ongoing dispute that is the subject of this case, Antoine brought suit twice previously in the Circuit Court of Jefferson County, Alabama, against multiple parties, including the Johnsons, for the surface waters that ponded annually at the rear of her lot and the adjoining lots. This Court has referred to the state-court lawsuits as *Antoine I* and *Antoine II*. Although Antoine attempted to base her state-court complaints on different legal theories, the facts were the same, the parties were the same (i.e. the Johnsons or one of their companies), and the causes of action were the same. In both cases, the circuit court ruled against Antoine and found her responsible for creating the water ponding problem on her lot and the adjoining lots.[13] Antoine has exhausted her appeals to the Alabama Court of Civil Appeals and the Alabama Supreme Court in *Antoine I* and *Antoine II*. Her counterclaim in this case represents the third time in seven years that she has filed suit against the Johnsons for the water ponding problem on her lot.

Based on the two previous judgments entered against Antoine by the Circuit Court of Jefferson County, Alabama, and based on the other relevant factors discussed above, this Court finds that all of the elements required to apply the doctrine of res judicata have been satisfied to prevent Antoine from re-litigating *Antoine I* and *Antoine II* before this Court. Therefore, res

---

[13] The circuit court entered judgments on the merits in both cases. In *Antoine I*, the court rendered its judgment after a full trial. In *Antoine II*, the court rendered its judgment by granting the motion for summary judgment filed by two of the Johnsons' companies. The grant of summary judgment constitutes an adjudication on the merits. See *Brown v. Morris Hardwick Schneider*, No. 1:14-CV-3537-RWS-JCF, 2015 WL11622464, at *4 (N.D.Ga. Apr. 23, 2015).

judicata prevents Antoine from prevailing on her counterclaim in this case, and the relief she has requested is due to be denied.

### E. Collateral Estoppel

Another affirmative defense raised by the Johnsons in their amended answer was collateral estoppel. "'[R]es judicata and collateral estoppel are two closely related, judicially created doctrines that preclude the relitigation of matters that have been previously adjudicated or, in the case of res judicata, that could have been adjudicated in a prior action.'" *Bond*, 2017 WL 728176, at *5 (quoting *Saad*, 851 So. 2d at 516-17).

Collateral estoppel is also known as issue preclusion, and its "principles apply to dischargeability proceedings." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675, (quoting *Grogan v. Garner*, 498 U.S. 279, 285 n.11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991)).

A bankruptcy court in the Middle District of Alabama has addressed this defense and its elements in detail:

> "Under collateral estoppel," also known as issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana*, 440 U.S. at 153, 99 S.Ct. 970. A party asserting collateral estoppel "must establish that (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue." *Tampa Bay Water v. HDR Eng'g, Inc.,* 731 F.3d 1171, 1180 (11th Cir.2013). When "the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." *Justice Oaks II*, 898 F.2d at 1549 n. 3 (internal quotation marks omitted). Therefore, collateral estoppel is narrower in the scope of its preclusion than res judicata is, but broader in its application.

*Danley* 552 B.R. at 892-93.

As a bankruptcy court in the Northern District of Georgia provided, "[t]he doctrine of collateral estoppel seeks to prevent the re-litigation of issues previously contested and determined by a valid and final judgment in another court." *Caitlin Energy, Inc. v. Rachel (In re Rachel)*, 527 B.R. 529, 537 (Bankr. N.D. Ga. 2015).

"While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court. . . ." *St. Laurent,* 991 F.2d at 676 (quoting *Halpern v. First Ga. Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir. 1987)).

To determine if collateral estoppel applies, this Court narrows its focus and compares the specific issues raised by Antoine in *Antoine II* before the Circuit Court of Jefferson County, Alabama, with the issues now raised in her counterclaim before this Court.

Antoine's complaint, which she filed in *Antoine II* on or about February 5, 2013, alleged fraud with the following:

- Lot 35 was not suitable for building a house because of periodic flooding in violation of an implied warranty for residential house building suitability.

- The sales contract between Oxmoor Landing and Antoine fraudulently stated that Lot 35 was not in a flood plain.

- The defendants, including Alvin Johnson, fraudulently omitted a drainage easement for Lot 35 and the adjoining lots from the Oxmoor Landing [subdivision plat] in violation of Alabama law (Defendant's Ex. 24).

- Oxmoor Landing submitted fraudulent topographic maps to the circuit court during the proceedings in *Antoine I*.

- The circuit court's award of compensatory damages and order for injunctive relief in *Antoine I* was based on intentional, fraudulent misrepresentations.

24

Antoine's counterclaim, which she filed in the instant case on October 19, 2016, alleged actual fraud, false representation, fraud in the inducement, and fraud in the factum with the following:

- Alvin Johnson signed a sales contract on behalf of Oxmoor Landing which stated in Paragraph 8 that Lot 35 was not in a flood plain, but the lot floods.

- Alvin Johnson signed the Oxmoor Landing subdivision plat without drainage easements on Antoine's lot or the adjoining lots in violation of Alabama law, and this amounted to a concealment of a drainage easement.

- The parties executed a contract form approved by the Birmingham Association of Realtors in 1998 instead of a newer form approved by the Association in 2006, which made the executed contract illegal, unapproved, and obsolete.

When comparing the complaint in *Antoine II* to the counterclaim in this case, the issues raised and the fraud alleged by Antoine are identical. Although the allegation about the 2006 version of the Association of Realtors contract form appears to be a new or different issue, it is not. It amounts to the same sales contract issue that Antoine alleged previously against the Johnsons for the water ponding at the back of her lot and the adjoining lots.

Based on the testimony and the exhibits presented at trial in the instant case, the Johnsons and Antoine actually litigated the fraud claims in *Antoine II,* and Antoine appealed the circuit court's decision on those issues to the Alabama Court of Civil Appeals and the Alabama Supreme Court.

The determination of the fraud issues was a critical and necessary part of the circuit court's judgment in *Antoine II*, as this provided the basis for the circuit court's conclusion that Antoine's actions in filing and prosecuting her case against the Johnsons and others was without substantial justification, groundless in law, vexatious, and frivolous. For this reason and others, the circuit court ruled against Antoine and awarded $15,975 in attorneys' fees and $711 in costs to two of the

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document      Page 25 of 32

Johnsons' companies, Johnson Realty and Oxmoor Landing, under the Alabama Litigation Accountability Act (ALAA).

According to the record in the instant case, Antoine had a full and fair opportunity to litigate the fraud issues before the circuit court in *Antoine II*. She also vigorously pursued appellate review of the *Antoine II* decision by the Alabama appellate courts.

Based on the litigation, and the determination of the specific fraud issues against Antoine by the Circuit Court of Jefferson County, Alabama, in *Antoine II*, and based on the other relevant factors discussed above, this Court finds that all of the elements required to apply the doctrine of collateral estoppel have been satisfied to prevent Antoine from re-litigating the *Antoine II* fraud issues before this Court. Therefore, collateral estoppel prevents Antoine from prevailing on her counterclaim for fraud in this case, and the relief she has requested is due to be denied.

### F.  Statute of Limitations

The Johnsons asserted the statute of limitations as another affirmative defense to Antoine's counterclaim. It is well-established in Alabama that the two-year statute of limitations does not begin to run until an aggrieved party discovers the fact constituting the fraud.  The Alabama Code provides:

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

Ala. Code § 6-2-3 (1975).

The Supreme Court of Alabama issued an opinion recently about tolling the statute of limitations for fraud:

> In <u>DGB, LLC v. Hinds</u>, 55 So.3d at 226, this Court stated:

"This Court has stated: 'When, as in this case, the plaintiff's complaint on its face is barred by the statute of limitations, the complaint must also show that he or she falls within the savings clause of § 6–2–3.' Miller v. Mobile County Bd. of Health, 409 So.2d 420, 422 (Ala. 1981). '[T]he burden is upon he who claims the benefit of § 6–2–3 to show that he comes within it.' Amason v. First State Bank of Lineville, 369 So.2d 547, 551 (Ala. 1979). However, a 'dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply.' Travis v. Ziter, 681 So.2d 1348, 1351 (Ala. 1996).

"This Court has held that to show that a plaintiff's claims fall within the savings clause of § 6–2–3 a complaint must allege the time and circumstances of the discovery of the cause of action. See, e.g., Angell v. Shannon, 455 So.2d 823, 823–24 (Ala. 1984); Papastefan v. B & L Constr. Co., 356 So.2d 158, 160 (Ala. 1978). The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury. See, e.g., Smith v. National Sec. Ins. Co., 860 So.2d 343, 345, 347 (Ala. 2003); Lowe v. East End Mem'l Hosp. & Health Ctrs., 477 So.2d 339, 341–42 (Ala. 1985); Miller, 409 So.2d at 422. See also Amason, 369 So.2d at 550."

*Ex parte Price,* No. 1151041, 2017 W L 1369856, at *6 (Ala. Apr. 14, 2017).

According to testimony at trial, Antoine received notice of the Johnsons' Chapter 7 bankruptcy case on January 8, 2010, when the Johnsons' counsel filed a Suggestion of Bankruptcy (Plaintiffs' Ex. 2) with the Circuit Court of Jefferson County, Alabama, in *Antoine I.* Antoine filed her counterclaim in the instant case on October 19, 2016. As discussed above, Antoine's counterclaim asserted actual fraud, false representation, fraud in the inducement, and fraud in the factum based on the following:

- The 2007 Sales Contract. Alvin Johnson signed a sales contract on behalf of Oxmoor Landing which stated in Paragraph 8 that Lot 35 was not in a flood plain, but the lot floods.

- The Oxmoor Landing Subdivision Plat. Alvin Johnson signed the Oxmoor Landing subdivision plat without drainage easements on Antoine's lot or the adjoining lots in violation of Alabama law, and this amounted to a concealment of a drainage easement.

- The Birmingham Association of Realtors Contract Form. The parties executed a contract form approved by the Birmingham Association of Realtors in 1998 instead of

27

a newer form approved by the Association in 2006, which made the executed form illegal, unapproved, and obsolete. The 1998 form included Paragraph 18 about litigation costs. The 2006 form included Paragraph 15 about mediation and arbitration costs, and a waiver of trial by jury.

Oxmoor Landing and Antoine executed the sales contract for Lot 35 on October 25, 2007. During the trial of this case, the evidence showed that Antoine discovered the surface water ponding on the back of her lot and the adjoining lots at the end of February 2008 (Defendant's Exhibit 1). Although Antoine established when she learned of the ponding problem, she did not offer any evidence to establish when she discovered that Lot 35 was located in what she believed was a flood plain. The only testimony provided by Antoine's expert, Karen Christine Bailey, showed that Lot 35 was, in fact, not located in an area designated as a special flood-prone area by FEMA. For the purposes of this argument, this Court holds that Antoine discovered the flood plain issue no later than February 5, 2013, the date when she first alleged in her complaint in *Antoine II* that Lot 35 was located in a flood plain (Doc. No. 1, Exhibit G). Since Antoine filed her counterclaim in the instant case more than 2 years after February 5, 2013, the statute of limitations applies to the flood-plain argument and prevents Antoine from prosecuting it further.

Alvin Johnson signed the subdivision plat (Defendant's Exhibit 24) on behalf of Oxmoor Landing on February 15, 2005. In her complaint in *Antoine II*, Antoine claimed that she discovered the omission of the drainage easement for her lot and the adjoining lots from the Oxmoor Landing subdivision plat on May 26, 2011. Since Antoine filed her counterclaim in the instant case more than 2 years after May 26, 2011, the statute of limitations applies to the omitted-drainage-easement argument and prevents Antoine from prosecuting it further. In addition, this Court has already found that Antoine did not offer sufficient testimony or documents to establish that Alvin Johnson concealed a drainage easement when he signed the subdivision plat in 2005 on behalf of Oxmoor

28

Landing. It is worth noting that the Oxmoor Landing subdivision plat was recorded as instrument no. 0216/0013 with the Probate Court of Jefferson County, Alabama, on April 4, 2005 and has since been available for viewing and inspection.

The sales contract executed by Oxmoor Landing and Antoine on October 25, 2007 included a caption that the form was approved by the Birmingham Association of Realtors, with a date of July 24, 1998 (Defendant's Ex. 2). Antoine alleged in her counterclaim that the Johnsons falsely represented the contract form executed by the parties was "current and approved" when they were fully aware that it was "illegal, unapproved, and obsolete." Antoine based this allegation on an updated contract form approved by the Birmingham Association of Realtors on March 29, 2006 (Defendant's Ex. 31).

During her direct examination, Antoine offered part of a transcript from a hearing (Defendant's Ex. 29) as evidence of when she discovered the 2006 version of the Association of Realtors contract form. The hearing took place on July 27, 2015 before the Circuit Court of Jefferson County in *Antoine II.* During that hearing, the Johnsons' attorney, Oscar Adams, made a comment that suggested the Johnsons had amended the contract (Defendant's Ex. 29, Page 8). However, during Antoine's examination of Mr. Adams in the instant case, he did not recall making the comment and he denied that the Johnsons amended the sales contract for Lot 35 on behalf of Oxmoor Landing.

This Court does not find this evidence to be persuasive regarding the time and circumstances of Antoine's discovery of the 2006 version of the Association of Realtors contract form. This Court also questions the relevance of this alternate contract form, which was available through a third party when the Johnsons and Antoine executed the sales contract for Lot 35. Accordingly, this Court holds that Antoine knew or should have known about the updated contract

29

form when she filed her complaint in *Antoine II* on February 5, 2013. Since Antoine filed her counterclaim in the instant case more than 2 years after February 5, 2013, the statute of limitations applies and prevents Antoine from advancing her fraud claim based on the differences between the contract forms approved by the Birmingham Association of Realtors in 1998 and 2006.

In her Answer to Request for Admissions (Plaintiff's Ex. 20), Antoine alleged that the continuing tort doctrine tolled the statute of limitations on her fraud claim because her lot continued to flood through the year 2015. The burden was on Antoine to show that her fraud claim came within the savings clause of Alabama Code section 6-2-3 to toll the statute of limitations. The Circuit Court of Jefferson County, Alabama ruled against Antoine in *Antoine I* and *Antoine II,* and found that she, not the Johnsons, was responsible for the water ponding on Lot 35 and the adjoining lots. During the trial of the instant case, Antoine did not meet her burden to establish that actions by the Johnsons caused the water ponding on Lot 35, or that their actions amounted to a continuing tort that tolled the statute of limitations. Nor did Antoine establish the facts and circumstances of an alleged concealment by the Johnsons, or actions that prevented Antoine from discovering facts surrounding her injury. Based on the foregoing, this Court finds that Antoine did not meet the burden of proof to toll the statute of limitations with the continuing tort doctrine.

### G. Conclusion

This Court has carefully considered the arguments made by the Johnsons in support of their complaint and motion against Antoine. The Johnsons did not list Antoine as a creditor in their bankruptcy schedules, so whatever debt they owed to Antoine was not discharged in 2009. Therefore, Antoine did not violate the Johnsons' Chapter 7 discharge injunction by suing them in *Antoine I*, *Antoine II*, or with the counterclaim in this case. Accordingly, the Johnsons cannot recover attorney fees, costs, or damages from Antoine.

Case 09-00240-TOM7    Doc 154    Filed 05/05/17    Entered 05/05/17 17:58:20    Desc Main
Document    Page 30 of 32

This Court has also carefully considered all arguments made by Antoine in support of her counterclaim for nondischargeability of the debt she claimed against the Johnsons. Antoine did not meet the burden of proof to establish an exception to discharge under 11 U.S.C. § 523(a)(2)(A) for false pretenses, a false representation, or actual fraud. As requested by the Johnsons in Paragraph D of their complaint, the debt claimed by Antoine from the Johnsons is hereby discharged pursuant to 11 U.S.C. § 727(b) as of the date of this Memorandum of Decision.

The Eleventh Circuit Court of Appeals has held that "a discharge is final: it marks the end of adjudication of claims against a bankruptcy estate." *Jacks v. Wells Fargo Bank, N.A. (In re Jacks),* 642 F.3d 1323, 1328 (11th Cir. 2011).

The Circuit Court of Jefferson County stated on Page 9 of its Final Order of September 15, 2015, in *Antoine II* "[w]hen a lawsuit is tried and [if] affirmed on appeal by the highest courts of the land, the law thus established must be honored by the litigants, as a cornerstone of our system of government."

During the trial of this case, Antoine testified that she would not quit, and would continue filing lawsuits against the Johnsons even if she loses because, in her opinion, she can file a fraud claim until the fraud ceases. With this Memorandum of Decision, this Court hereby rules that the Bankruptcy Code imposes limitations on the fraud claims that Antoine has asserted in this case.

After nearly 10 years of extremely difficult disputes and litigation between Antoine and the Johnsons, this Court has every reason to believe that both parties will respect and follow the rulings contained in this decision, which are subject to appellate review.

Case 09-00240-TOM7   Doc 154   Filed 05/05/17   Entered 05/05/17 17:58:20   Desc Main
Document      Page 31 of 32

This Court will enter a separate Order consistent with the findings contained in this Memorandum of Decision. Any relief requested by either party that has not been specifically addressed in this decision is hereby denied.

Dated: May 5, 2017

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge